## Case No. 10,801.

### The PATRAS.

[Blatchf. Pr. Cas. 269.] [1]

District Court, S. D. New York. Dec. 10, 1862. [2]

PRIZE—ATTEMPT TO VIOLATE BLOCKADE—CARRYING CONTRABAND ARTICLES.

Vessel and cargo condemned for an attempt to violate the blockade.

In admiralty.

BETTS, District Judge. This vessel and cargo were captured at sea as prize, by the United States steamer Bienville, May 27, 1862, and were brought into this port for adjudication. A libel was filed July 11, 1862, against the vessel and cargo, and, on return by the marshal to the monition of due service thereof, no appearance being given for the cargo, a decree of default was regularly entered against that; and, a claimant having intervened in behalf of the vessel, and a claim therefor having been duly filed July 29, 1862, the cause was brought to hearing on that issue, and was

---

1 [Reported by Samuel Blatchford, Esq.]
2 [Affirmed in Case No. 10,802.]

argued for the libellants, the claimants appearing in court without contesting the suit further. Intermediate the capture and the final hearing, portions of the cargo, consisting of military equipments and supplies, were, by an interlocutory decree of the court, appraised, and, on application in behalf of the United States, were delivered over to the use of the government. The vessel had a British registry, and her shipping articles, dated April 2, 1862, were for a voyage, not to exceed twelve months, from London to Bermuda, and any other port in the West Indies, North and South America, or the Mediterranean, and back to a final port of discharge in the United Kingdom or continent of Europe, between the Elbe and Brest. It appears from an indorsement on the articles that they were deposited by the vessel at the British consulate in Havana, May 21, 1862. No instructions, manifest, bill of lading, or other shipping papers were delivered from the vessel to the captors, denoting the time she left Havana, or the direction or cargo she took thence, or her or its destination; and the shipping agreement plainly leaves ample authority to her master to manage the voyage at his discretion. Some important papers of that description were, after the capture, found on the vessel, but they are not of a character to afford a clear account of the lading, or of its destination or owners. The ship's log is equally void of perspicuity and certainty in its statements. The entries are made in a common sized pocket memorandum book, ruled and bound in flexible leather. The heading is: "Left Falmouth for Madeira." The entries are in paragraphs for each consecutive day, are written quite across two pages of the book, beginning April 13, 1862, and terminating May 9th, and were apparently written at the same time, and with the same ink, and only one stoppage of the vessel is stated in that log. The vessel is alleged to have coaled at Funchal, Madeira, April 19th. The official log enters the commencement of the voyage as "April 3, 1862," and the nature of it as "West Indies and Mexico." This log states that the ship was at St. Thomas May 10th, taking in coal and had a disturbance on board among the crew, and also another in the night at Havana, May 18th. No mention is made in either log of any other port or place at which the vessel touched on her outward voyage, and there is no entry in either log respecting the vessel, her cargo, or her proceedings, after the 21st of May, 1862.

The master testifies that the vessel was bound to St. John, New Brunswick, on the voyage upon which she was taken, and that it began at London and was to have ended in the United Kingdom, or on the continent of Europe. The carpenter states the voyage to have been undertaken according to the shipping articles, and that he did not know that St. John was contemplated to be included within it, except that he learned so from the master at Havana. The master further asserts that he was wholly ignorant of the lading of the vessel, that he did not know what the various boxes, casks, etc., on board of her contained, and that the same cargo was on board at the time of her capture. The carpenter and the cook, or the seaman, say that they understood that a large quantity of powder, in casks, and of muskets or rifles, in boxes, were shipped for the voyage in England, and the carpenter also says that he understood that the vessel was intended to make the port of Charleston. The master makes a widely differing estimate of the nearness of the vessel to Charleston when captured, from that made by the carpenter and the seaman; the master alleging that she was 30 miles from the bar, the carpenter that she was 10 or 12 miles, and the cook or seaman that she was 8 or 10 miles. No affirmative fact is stated by any one of the witnesses on his examination, going to mitigate the pressure of the presumptive evidence, showing the culpability of the voyage as one plainly arranged with intent to violate the blockade at Charleston, and also to introduce into that port articles contraband of war. All three of the witnesses admit their knowledge of the existence of the war and of the blockade of Charleston when the voyage was undertaken, and at the time of the approach of the vessel to the port, and no suggestion is offered in proof justifying her position when arrested, directly in the vicinity of the port and heading for it.

A decree of condemnation and forfeiture must be entered because of the intention and endeavor of the vessel to run the blockade of Charleston.

This decree was affirmed, on appeal, by the circuit court, November 14, 1863 [Case No. 10,-802].